O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ESTHER ENUNWAONYE,<br><br>        Plaintiff,<br><br>v.<br><br>AURORA LOAN SERVICES LLC; AURORA BANK FSB; QUALITY LOAN SERVICE CORPORATION; SBMC MORTGAGE, GENERAL PARTNERSHIP; and DOES I-XX, Inclusive,<br><br>        Defendants.<br>_____ | Case No. CV 11-00879 ODW (MANx)<br><br>Order **GRANTING** Defendants' Motions to Dismiss [48, 50] [Filed 07/01/11, 07/11/11] |

## I. INTRODUCTION

Pending before the Court are Defendants' two concurrently-filed motions: (1) SBMC Mortgage's ("SBMC") Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC"), and (2) Aurora Loan Services LLC and Aurora Bank FSB's (collectively, "Aurora")[1] Motion to Dismiss Plaintiff's SAC. (Dkt. Nos. 48, 50.)[2] Plaintiff, Esther Enunwayonye ("Plaintiff") filed a consolidated Opposition on August 3, 2011, (Dkt. No.

---

[1] Where appropriate, the Court refers to SBMC, Aurora Loan and Aurora Bank collectively as "Defendants."

[2] Quality Loan Service has been excused from further participation in this case. (*See* Dkt. No. 14.)

1

52), to which SBMC filed a Reply on August 4, 2011, (Dkt. No. 52).  Having considered the papers filed in support of and in opposition to the instant Motions, the Court deems the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.  For the reasons discussed below, Defendants' Motions to Dismiss are **GRANTED**.

## II.  FACTUAL BACKGROUND

In September 2006, Plaintiff obtained a loan from SBMC to purchase property located at 800 Crenshaw Boulevard, Los Angeles, California (the "Subject Property"). (SAC at 3.)  The total purchase price for the Subject Property was $1,671,275.56, of which $1,050,000.00 was financed with SBMC under a five-year, interest-only adjustable rate loan.  (SAC at 3.)  Shortly after the loan funded, SBMC sold Plaintiff's loan and transferred the servicing rights to Homecomings Financial.[3]  (SBMC Mot. at 2; SAC ¶ 1, Exhs. 3b, 4.)  Thereafter, Aurora obtained the servicing rights and Quality Loan Service ("Quality") was substituted as trustee under the deed of trust.  (SAC at 5; Aurora Mot. at 2.)

As of January 1, 2008, Aurora increased Plaintiff's monthly payment from $3,881.00 to $4,200.00, purportedly to cover property mortgage insurance.  (SAC at 6, 7.)  Plaintiff alleges that this increase was unwarranted because she independently maintained property mortgage insurance on the Subject Property.  (SAC at 6-7.)  Notwithstanding, Plaintiff defaulted on her loan on or before April 1, 2009.  (Aurora Mot. at 2.)  Quality, as trustee, thereafter recorded a Notice of Default on behalf of Aurora.  (SAC at 17.)  Because Plaintiff failed to cure the default, the Subject Property was sold at an auction on August 9, 2010, whereby title was conveyed to Aurora.  (Aurora Mot. at 2; SAC at 17.)

As a result of the foregoing events, on December 30, 2010, Plaintiff filed a Complaint in Los Angeles Superior Court.  (Dkt. No. 1.)  Aurora, with the consent of Quality and SBMC, subsequently removed the action to federal court.  (Dkt. No. 1.)  On February 4, 2011, SBMC and Aurora each filed a motion to dismiss Plaintiff's Complaint, (Dkt. Nos. 4, 6), both of which were granted.  (Dkt. No. 14.)  Plaintiff then

---

[3] Homecomings Financial is not a party to this case.

filed her First Amended Complaint ("FAC") on March 23, 2011, (Dkt. No. 16), which was once again dismissed because it contained "substantially the same allegations as the original Complaint." (Dkt. No. 42.) On June 15, 2011, Plaintiff filed her SAC, (Dkt. No. 43), alleging the following ten claims against Defendants: (1) declaratory relief; (2) fraud; (3) tortious violation of statute; (4) quiet title; (5) reformation; (6) violation of California Business and Professions Code § 17200; (7) violation of California Civil Code § 2923.6; (8) violation of California Civil Code § 1788.17; (9) violation of California Civil Code § 1572; and (10) injunctive relief. (Dkt. No. 43.)

Defendants now move to dismiss Plaintiff's SAC in its entirety. (Dkt. Nos. 48, 50.) The Court addresses Defendants' arguments and the sufficiency of Plaintiff's claims below.

### III.  LEGAL STANDARD

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). For a complaint to sufficiently state a claim, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id*. Rather, to overcome a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation and citation omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement of relief." *Id*. (internal quotation and citation omitted). The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory

3

factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

When considering a 12(b)(6) motion, a court is generally limited to considering materials within the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *See Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (citing *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)). A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Finally, when considering a 12(b)(6) motion, courts must bear in mind that leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). While Rule 15(a) is very liberal, "a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citations omitted). Against this backdrop, the Court turns to the merits of the instant motions.

## IV. DISCUSSION

Most of the claims set forth in Plaintiff's SAC are dependant upon a finding that Defendants engaged in fraudulent conduct. Accordingly, the Court first addresses the sufficiency of Plaintiff's claim for fraud, followed by a discussion of the remaining claims. Finally, the Court determines whether injunctive and/or declaratory relief are appropriate.

    **A.**    **Plaintiff's Second Claim for Fraud and Ninth Claim for Violation of California Civil Code Section 1572**[4]

---

[4] Plaintiff alleges a claim under California Civil Code section 1572, which is the California statute for actual fraud. Because the pleading requirements are substantially the same for both Plaintiff's fraud claim and Plaintiff's section 1572 claim, the Court analyzes these claims collectively.

A complaint alleging fraud must meet the heightened pleading standards under Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), which requires Plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The complaint must specify such facts as the times, dates, places, and benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (citation omitted). Rule 9(b) also does not allow plaintiffs to "merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted). Moreover, a fraud claim involving a corporate defendant, "must identify the 'names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" *Saldate v. Wilshire Credit Corp.*, 686 F. Supp. 2d 1051, 1065 (2010) (quoting *Tarmann v. State Farm Mut. Auto Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991)).

Additionally, while the requirements of Rule 9(b) are federally imposed, "a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (citation omitted). "In California, the elements for a claim of fraud are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Clark v. Countrywide Home Loans, Inc.*, 732 F. Supp. 2d 1038, 1044 (E.D. Cal. 2010) (citing *Small v. Fritz Cos.*, 65 P. 3d 1255, 1258 (Cal. 2003)).

Here, Plaintiff alleges that the foreclosure and eventual loss of her property were caused by a sequence of fraudulent acts committed by Defendants. (SAC ¶ 40.) Specifically, Plaintiff contends that Defendants "engaged in an illegal scheme," whereby they fraudulently executed loans secured by real property, eventually allowing them to obtain "profits by the sale of instruments arising out of the transactions." (SAC ¶ 26.)

The Court discusses SBMC's and Aurora's alleged participation in the fraudulent scheme individually.

First, Plaintiff alleges that SBMC made several misrepresentations during the inception of the loan itself. Specifically, Plaintiff's alleges that SBMC defrauded Plaintiff by "falsif[ying] Plaintiff's zip code[,] . . . exceeding the Maximum Amount set by Freddie Mac . . . [and] failing to disclose the true cost of Plaintiff's loan." (SAC at 3-6, 21.) Plaintiff further alleges that these fraudulent misrepresentations made it impossible for her to obtain a favorable refinancing option and played a significant role in causing her to default on the loan. (SAC at 4, 22.)

Each of these contentions fails to state facts "plausibly suggesting" SBMC made a fraudulent misrepresentation. *See Ashcroft*, 129 S. Ct. at 1949. With respect to the allegation that SBMC defrauded Plaintiff by exceeding the "Maximum Amount set by Freddie Mac," Plaintiff fails to allege what specific misrepresentations or omissions were made. Rather, Plaintiff merely states that she "is told and believes" that her loan exceeded this amount without any reference to the "who, what, where, when, where and how" the omission occurred. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Without alleging the specific circumstances surrounding SBMC's alleged omission, Plaintiff's claim lacks the specificity required by Rule 9(b). Moreover, SBMC's failure to notify Plaintiff of this information, in itself, is simply insufficient to support a fraud claim, and Plaintiff has not shown any case law that establishes otherwise.

Similarly, Plaintiff's allegation that SBMC deceived plaintiff by failing to disclose the true cost of Plaintiff's loan does not mention with the requisite specificity what misrepresentations were actually made. The loan itself clearly sets forth its terms, *i.e.*, that it was a five-year adjustable rate mortgage loan, with payments set to increase on October 1, 2011. (SBMC RJN, Exh. B.) Without any allegation by Plaintiff that an SBMC representative conveyed contradicting information, Plaintiff's claim fails in this respect.

6

Finally, as for the incorrect zip code, Plaintiff fails to establish justifiable reliance because she could not have justifiably relied on a misrepresentation of her own zip code, while admittedly having knowledge of its falsity. In sum, each of Plaintiff's allegations with respect to SBMC's participation in the alleged fraudulent scheme fail to meet the requisite heightened pleading standard under Rule 9(b).

Second, Plaintiff alleges that Aurora "fraudulently took over the servicing rights to Plaintiff's property with intention to steal it" and "devised a scheme to add redundant Property mortgage Insurance on Plaintiff's account." (SAC at 6, 7.) Here, with respect to Plaintiff's allegation that Aurora fraudulently assumed the servicing rights, Plaintiff does not "state with particularity the circumstances constituting fraud or mistake," but rather makes nothing more than mere conclusory allegations. Fed. R. Civ. P. 9(b). Thus, Plaintiff's allegations in this respect fail.

Plaintiff's allegations with respect to Aurora's alleged actions to "devise[] a scheme to add redundant Property mortgage Insurance on Plaintiff's account," however, are more substantive. Nevertheless, while Plaintiff's allegations may be sufficient to establish some of the elements of a fraud claim, Plaintiff fails to assert how she justifiably relied on Aurora's alleged misrepresentation. Indeed, Plaintiff essentially admits that she did not rely on Aurora's conduct because she continued to pay the original payment of $3,881.00, not the increased payment of $4,200.00. (SAC at 6, 8.) Thus, because Plaintiff fails to allege facts to support an element of her claim, Plaintiff's fraud claim fails.

Because Plaintiff has been given multiple opportunities to sufficiently state a claim against SBMC and has failed to do so, it appears as though further amendment will be futile. In light of the foregoing, Plaintiff's claim for fraud and Plaintiff's claim for violation of California Civil Code § 1572 against SBMC are hereby **DISMISSED WITH PREJUDICE**. Conversely, because it is possible that Plaintiff may have relied on Aurora's alleged misrepresentation in a way unknown to the Court at this time, she may be able to establish a fraud claim against Aurora. To allege such justifiable reliance, Plaintiff must assert *facts* indicating how she justifiably relied on Aurora's alleged

misrepresentation. The Court finds that allowing Plaintiff another opportunity to amend will not unduly prejudice Aurora, nor cause an undue delay in litigation. Furthermore, it may not be futile if Plaintiff can provide the requisite facts. *See AmerisourceBergen Corp.*, 465 F.3d at 951. Consequently, Plaintiff's claim for fraud and Plaintiff's claim for violation of California Civil Code § 1572 against Aurora are hereby **DISMISSED WITHOUT PREJUDICE**.

### B. Plaintiff's Third Claim for Tortious Violation of Statute

Plaintiff alleges a claim for tortious violation of the Real Estate Settlement Procedures Act ("RESPA"). Specifically, Plaintiff alleges that Defendants' "failure to respond to R.E.S.P.A. constitute[s] a violation of 12 U.S.C. § 2607(b). (SAC ¶ 147.) "Under RESPA, any action pursuant to § 2607 may be brought within one year 'from the date of the occurrence of the violation.'" *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1195 (E.D. Cal. 2010) (quoting 12 U.S.C. § 2614). The statute of limitations begins to run and the "ill occurs, if at all, when the plaintiff pays for the [tainted] service, typically at the closing." *Id.* (citations omitted). As Plaintiff's loan closed in September of 2006 and Plaintiff filed this action on December 30, 2010, Plaintiff's cause of action under 12 U.S.C. § 2607 is barred by the statute of limitations and is therefore **DISMISSED WITH PREJUDICE** as to all Defendants.

### C. Plaintiff's Fourth Claim for Quiet Title and to Set Aside Foreclosure

"The purpose of a quiet title action is to determine 'all conflicting claims to the property in controversy'" and to distribute to each the interest to which they are entitled. *Ayala v. World Savings Bank, FSB*, 616 F. Supp. 2d 1007, 1015 (C.D. Cal. 2009) (citation omitted). To allege a claim for quiet title, a complaint must be verified and include: (1) a legal description of the property; (2) the title of the plaintiff and the basis of the title; (3) the adverse claims to the title of the plaintiff; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the title of the plaintiff. Cal. Civ. Pro. § 761.020. Here, Plaintiff alleges that Defendants "employed coercive tactics in order to force Plaintiff to sign the loan documents" by allegedly making "false representations to Plaintiff in order to fund a loan" with "excessively high interest rates."

(SAC ¶¶ 163-64.) Essentially, Plaintiff's request that the Court quiet title to the Subject Property and set aside foreclosure is predicated on her fraud claim, which has been dismissed with prejudice against SBMC and has been dismissed without prejudice against Aurora. Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiff's claim for quiet title and to set aside foreclosure against SBMC and **DISMISSES WITHOUT PREJUDICE** Plaintiff's claim for quiet title and to set aside foreclosure against Aurora.

### D. Plaintiff's Fifth Claim for Reformation

Plaintiff's fifth claim seeks reformation of the loan pursuant to California Civil Code section 3399. Reformation allows parties to revise a contract when, "through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected," the contract's terms do not reflect the parties' true intentions. Cal. Civ. Code § 3399. Revisions may only take place "so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value." *Id.*

Here, Plaintiff alleges SBMC "committed a fraud against Plaintiff" because SBMC "did not disclose the terms and conditions for repayment, interest annual percentage rate, prior to obtaining Plaintiff's signature." (SAC ¶ 151.) Plaintiff, however, insufficiently alleges a substantive fraud claim against SBMC. Accordingly, because Plaintiff's claim for reformation is predicated on SBMC's allegedly fraudulent conduct during the origination of the loan, Plaintiff's claim for reformation is similarly insufficient and is hereby **DISMISSED WITH PREJUDICE** as to all Defendants.

### E. Plaintiff's Sixth Claim for Violation of California's Business And Professions Code Section 17200

Plaintiff alleges a claim under California's Unfair Competition Law ("UCL"). Cal. Bus. & Prof. Code § 17200. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *Id.* Liability under each prong of the UCL is "separate and distinct" from the others and, therefore, the statute "applies separately to business acts or practice that are (1) unlawful, (2) unfair, and (3) fraudulent." *Clark*, 732 F. Supp. 2d at 1050.

First, Plaintiff fails to specify the basis for her UCL claim. She merely creates a conclusory list of damages suffered and lists several statutes and claims, alleging that Defendants have purportedly engaged in "unfair, unlawful, and/or fraudulent conduct" under the UCL. Because each prong of a § 17200 violation introduces a separate theory of liability, Plaintiff's failure to allege whether Defendants' actions were unlawful, unfair, fraudulent, or some combination thereof, falls short of the Rule 8(a)(2) requirement. *See e.g.*, *Clark*, 732 F. Supp. 2d at 1050 (finding the plaintiff's § 17200 claim deficient because his allegations did not specify which of the three UCL prongs defendants violated). Accordingly, because Plaintiff's UCL claim against SBMC is predicated on her fraud claim, which has been dismissed with prejudice, Plaintiff's UCL claim against SBMC is also **DISMISSED WITH PREJUDICE**. However, because Plaintiff may be able to properly allege a UCL claim against Aurora, this claim is **DISMISSED WITHOUT PREJUDICE**.

    **F.    Plaintiff's Seventh Claim for Violation of California Civil Code Section 2923.6**

Plaintiff alleges in her seventh claim that under section 2923.6 "Defendants are now contractually bound to accept the loan modification as provided" by Plaintiff. (SAC ¶¶ 179, 185.) California Civil Code § 2923.6 provides "any duty servicers may have to maximize net present value . . . to all parties in a loan pool" under certain conditions. However, "there is no private cause of action under Section 2923.6." *Quinteros v. Aurora Loan Services*, 740 F. Supp. 2d 1163, 1174 (E.D. Cal. 2010) (citations omitted). Therefore, Plaintiff's Section 2923.6 claim is **DISMISSED WITH PREJUDICE** as to all Defendants.

    **G.    Plaintiff's Eighth Claim for Violation of California Civil Code Section 1788.17**

Plaintiff next alleges a violation of the Rosenthal Fair Debt Collection Practices Act ("California FDCPA"), California Civil Code § 1788.17, against all Defendants. The California FDCPA was enacted to "prohibit debt collectors from engaging in unfair and deceptive acts or practices in the collection of consumer debts, and to require debtors to

10

act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1; *see Clark*, 732 F. Supp. 2d at 1047-48.  Here, because "foreclosure does not constitute debt collection under the [California] FDCPA," *Izenberg v. ETS Services, LLC*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008), and Plaintiff's California FDCPA claim arises from foreclosure-related conduct, Plaintiff's California FDCPA claim is **DISMISSED WITH PREJUDICE** as to all Defendants.

### H. Plaintiff's First Claim for Declaratory Relief and Tenth Claim for Injunctive Relief

In her first claim for declaratory relief, Plaintiff seeks a judicial determination of her rights and title in the Subject Property.  Additionally, Plaintiff seeks, in her tenth claim, an injunction to restrain Defendants from "foreclos[ing] on the Subject Property by conducting a trustee's sale." (SAC ¶ 206.)  Because both declaratory relief and injunctive relief require an underlying claim, *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994); *Clark*, 732 F. Supp. 3d at 1050 (citations omitted), and here, none against SBMC exist, Plaintiff's first and tenth claims are **DISMISSED WITH PREJUDICE** as to SBMC.  Conversely, because Plaintiff may be able to state a claim against Aurora, Plaintiff's first and tenth claims against Aurora are **DISMISSED WITHOUT PREJUDICE**.

## IV. CONCLUSION

For the foregoing reasons, SBMC's Motion to Dismiss is hereby **GRANTED** and all claims against SBMC are hereby **DISMISSED WITH PREJUDICE**.  Additionally, Aurora's Motion is **GRANTED**.  Plaintiff's claims against Aurora for tortious violation of statute, reformation, violation of California Civil Code § 2923.6; and violation of California Civil Code § 1788.17 are **DISMISSED WITH PREJUDICE**.  Plaintiff's claims against Aurora for fraud, violation of California Civil Code § 1572, quiet title, violation of California Business and Professions Code § 17200, declaratory relief, and injunctive relief are **DISMISSED WITHOUT PREJUDICE**.  As to these claims, Plaintiff shall have forty-five (45) days in which to amend her complaint to state a claim

against Aurora. If Plaintiff can properly allege *facts* to support justifiable reliance, she may amend her fraud claim. Plaintiff is otherwise granted leave to amend to bring additional claims against Aurora which have not already been adjudicated by the Court.

Finally, the Court advises Plaintiff that a Federal Pro Se Clinic is located in the United States Courthouse at 312 N. Spring Street, Room 525, Fifth Floor, Los Angeles, California 90012. The clinic is open for appointments on Mondays, Wednesdays, and Fridays at 9:30 a.m. The Federal Pro Se Clinic offers on-site information and guidance to individuals who are representing themselves in federal civil actions. Plaintiff may wish to visit the clinic before filing an amended complaint.

**IT IS SO ORDERED.**

November 8, 2011

_____

HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE